STEUBING, Appellant, vs. L. G. ARNOLD, INC., Respondent.

*January 10—February 7, 1933.*

For the appellant there was a brief by *Ramsdell, King & Linderman* of Eau Claire, and oral argument by *Bailey E. Ramsdell*.

For the respondent there was a brief by *Farr & MacLeod* of Eau Claire, and oral argument by *Donald Farr*.

NELSON, J. The trial court was of the opinion that the plaintiff's driver at and just prior to the collision was guilty of negligence as a matter of law and changed the answers of the jury accordingly. It is contended by the plaintiff that the court erred in changing the answers of the jury which acquitted the plaintiff's driver of negligence. The sole question for determination is whether there is any credible evidence which in any reasonable view fairly admits of an inference that supports the jury's findings. If there is such evidence the trial court was not justified in changing the answers. *Svenson v. Vondrak,* 200 Wis. 312, 227 N. W. 240; *Hillside G. & T. Co. v. Pflittner,* 200 Wis. 26, 227 N. W. 282; *Millard v. North River Ins. Co.* 201 Wis. 69, 228 N. W. 746; *Rupert v. Chicago, M., St. P. & P. R. Co.* 202 Wis. 563, 232 N. W. 550; *Harter v. Dickman,* 209 Wis. 283, 245 N. W. 157.

The collision occurred on federal highway 53 while concrete paving work was in progress and while the road was closed to public travel. The defendant was the contractor in charge of the work and operated a number of its own trucks on the job. The plaintiff was a subcontractor who furnished several trucks with drivers and who was engaged in hauling materials to the concrete mixer from a point located several miles to the north. The grade of the new construction upon which the concrete slab was being laid ran along and in the general direction of an old graveled roadbed. The collision occurred about four-tenths of a mile north of where the concrete mixer was located. Before the work of hauling materials was started, defendant's superintendent called all of the drivers together and told them that the road was kind of narrow; that there were some bad spots on it, and clearly gave them to understand that a loaded truck should have the right of way over all empty trucks and that empty trucks should yield the right of way to loaded trucks. One of the defendant's officers testified that the drivers were instructed that the loaded trucks were to have the right of way and the empty trucks were to give them the preference of the road, because it was important to get the loads out of the unloading hopper to the truck and to the mixer and naturally a full truck should have the right of way.

For some distance north of the place of collision the new grading was situated to the west of the old roadbed. Loaded trucks returning from the hopper to the mixer traveled along the old roadbed up to a point where a soft place described as a "sand hole" had developed in the old roadbed. At that point, according to the testimony produced by the plaintiff, it was the custom and practice followed by the drivers of loaded trucks to go around the "sand hole" by turning to the right upon the new grading, traveling for a short distance thereon and then turning back onto the old

grading. There was, however, evidence adduced by the defendant to the contrary. Just prior to the collision the plaintiff's loaded truck was proceeding in a southerly direction along the old roadbed. When it reached a point just north of the "sand hole" it turned to the right up onto the new grading, proceeded on the new grading for a short distance and then turned back toward the old roadbed. Just at that time the defendant's empty truck was proceeding in a northerly direction along the easterly side of the new grading. The plaintiff's driver saw defendant's truck approaching and also observed that when it was a short distance away it was turned toward the west. Defendant's driver testified that he did turn his truck toward the west but that he did so in order to avoid a tar barrel which was standing on the easterly edge of the new grading, and that after passing the tar barrel he again turned back to the easterly side of the new grading. He then observed that the plaintiff's driver had turned his truck back toward the old grading. He then attempted by accelerating the speed of his truck and by turning to the right or east to avoid hitting the plaintiff's truck. The trucks, however, collided and came to a standstill. After the collision the plaintiff's truck was facing in a southeasterly direction, jammed up against the side of the defendant's truck, which was facing in a northeasterly direction. Both trucks immediately caught fire and, as a result, were greatly damaged.

Were the ordinary rules of the road applicable to this collision we should not hestitate to hold that the plaintiff's driver was guilty of negligence as a matter of law in turning to his left across the path of the defendant's truck. However, under the peculiar facts of this case, where the truck drivers were definitely instructed that loaded trucks had the right of way over empty trucks, we have a situation in which the established rules of the road are not controllingly applicable. There is no question that the plaintiff's

truck had the right to travel on the old roadbed as far as the "sand hole." There was evidence that loaded trucks, upon reaching the "sand hole," customarily turned to the right up onto the new grading, and then turned back to the old roadbed after passing the "sand hole." There was, to be sure, testimony adduced by the defendant that it was customary, after passing the "sand hole," to continue on the new grade to the mixer. The jury had a right to believe that the plaintiff's driver was following the usual line of travel around the "sand hole." He was driving a truck bearing a heavy load. Obviously in going around the "sand hole" up onto the new grading and back to the old roadbed he was so engaged as not to be required as a matter of law to maintain a continuous lookout ahead. Following the customary line of travel for loaded trucks and observing that the defendant's truck turned three or four feet to the west, it seems clear that plaintiff's driver had a right to assume that the driver of defendant's truck would obey the instructions, yield the right of way to the plaintiff's loaded truck either by turning to the west or by slowing down sufficiently to permit the plaintiff's truck to pass in safety. Were there no testimony tending to show that the plaintiff's truck, in turning around the "sand hole," was proceeding in the ordinary way and along the usual line of travel taken by loaded trucks, we should have a different situation. We think, however, under all of the circumstances of this case that the jury was reasonably warranted in inferring that plaintiff's driver was not negligent. This being our conclusion, we think the court erred in changing the answers of the jury and in ordering judgment for defendant.

*By the Court.*—Judgment reversed, with directions to reinstate the verdict as rendered by the jury and to enter judgment in favor of the plaintiff for the amount of the damages found.