GUMM and wife, Plaintiffs, vs. KOEPKE and others, Appellants: OATES and another, Impleaded Defendants and Respondents.

*February 15—May 17, 1938.*

636

For the appellants there were briefs by *Quarles, Spence & Quarles,* attorneys, and *Kenneth P. Grubb* and *Lawson Adams* of counsel, all of Milwaukee, and oral argument by *Mr. Adams.*

For the respondents there were briefs by *Bendinger, Hayes, Kluwin & Schlosser* of Milwaukee, and oral argument by *Gerald P. Hayes.*

The following opinion was filed March 15, 1938:

NELSON, J. The sole question for decision is whether the trial court erred in changing the answers of the jury respecting the negligence of the interpleaded defendant, Oates, as set forth in the statement of facts. The said defendants con-

tend that the court erred in changing said answers. The interpleaded defendants contend that it did not. It has been held over and over again that the question for determination in such situations is whether there is any credible evidence which in any reasonable view fairly admits of an inference that supports the jury's findings. If there is such evidence, trial courts are not justified in changing the answers. *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 228 N. W. 741; *Steubing v. L. G. Arnold, Inc.,* 210 Wis. 513, 246 N. W. 554; *Duss v. Friess,* 225 Wis. 406, 273 N. W. 547, and numerous other authorities cited in those opinions. So the narrow question presented is: Was there credible evidence adduced upon the trial which in any reasonable view fairly admits of the inferences drawn by the jury? The determination of this question necessitates a review of the evidence.

Just prior to the accident, the defendant, Koepke, an employee of the defendant, National Tea Company, was driving a large truck belonging to it, in a southerly direction on State Trunk Highway No. 55. That highway is a north-and-south highway, with an improved concrete roadbed, eighteen feet wide. It is an arterial highway. State Trunk Highway No. 60 is an east-and-west highway which runs into but not beyond highway No. 55. That highway, too, is a concreted highway. The entrance of highway No. 60 into highway No. 55 is a broad one, with rounded curves which commence back on highway No. 60 about eighty feet from the west edge of the concrete on highway No. 55. The spaces between the concreted roadbeds and the outer edges of the rounded curves are also concreted. Although highway No. 60 ends at its intersection with highway No. 55, a narrow town road extends easterly from that point. A short distance to the north of the intersection of highway No. 60 with highway No. 55, a narrow private driveway runs out of the east side of highway No. 55, the direction of

which is a little east of south. The center of the commencement of that driveway is about eighty feet north of the intersecting center line of highways No. 55 and No. 60. It runs into the narrow road and its center at that point is about twenty feet from the east line of the concrete on highway No. 55. To the south of the town road and to the east of highway No. 55, the plaintiff's garage is located. The north wall of the garage was located a little more than thirty feet south of the south line of the town road.

Shortly before the accident Koepke was driving the truck in a southerly direction along highway No. 55 at a speed of about thirty miles an hour. Oates was driving his automobile in an easterly direction on highway No. 60 intending to turn north on highway No. 55. Oates testified that he stopped at the "Stop" sign which was located on the right side of highway No. 60 at a point about ninety feet from the west side of the concrete on highway No. 55, and looked over his road map; that he then drove his automobile up to the edge of the concrete on highway No. 55, where he again stopped; that he looked to his left and observed the truck approaching at a distance which he estimated to be one hundred fifty to two hundred fifty feet; that he started forward in a northeasterly direction and then observed that the truck was turning to its left onto his side of the road; that he thereupon applied his brakes and stopped his automobile with only the left rear wheel west of the center line of highway No. 55; that the truck then turned into the private driveway, and shortly thereafter crashed into the northerly side of the plaintiffs' garage.

Koepke testified that, maintaining a proper lookout, his view was such that he could not see an automobile approaching on highway No. 60 until it was very close to the intersection between highways No. 60 and No. 55; that there was a bank to the northwest of the intersection with trees and shrubbery upon it, which cut off his view; that he first ob-

served Oates' automobile when it was coming onto highway No. 55; that Oates' automobile was stopped suddenly in the middle of highway No. 55 with a part of his automobile on each side of the yellow line; that he first observed Oates' automobile when his truck was between eighty and ninety feet north of where the Oates automobile came onto highway No. 55; that he was about fifty to sixty feet away from Oates' automobile when it was stopped; that to avoid a serious accident he turned his truck to the left and down the private driveway; that his truck grazed a telephone pole located on the right side of the private driveway at a point about twenty-five feet north of the center line of the town road; that the right front wheel of the tractor ran over a rock which was just east of the telephone pole; that his tractor was thrown into the air, completely dislodging him from his seat; that before he could regain control of the truck it smashed into the garage, demolished enough of the brick wall to permit it to enter the garage, passed through it, and knocked down or demolished a part of the south wall thereof.

The jury found that Oates was negligent in respect to lookout and in respect to yielding the right of way and causation. In our view, the jury clearly was permitted to disbelieve the testimony of Oates that he stopped his automobile just before entering upon the concrete on highway No. 55. A witness, who was on the east side of his building located about opposite the plaintiffs' garage and to the southwest of the intersection, testified that his attention was first called to the Oates automobile by the squeak of his brakes; that Oates' automobile stopped on the yellow line while headed in a northeasterly direction; that the yellow line was about under the middle of the automobile; that at the same time he saw the truck approaching from the north, and thereafter saw it turn down the private driveway; that he observed well-defined skid marks ten to fifteen feet long

immediately back of the Oates automobile. Another witness also testified to the squeak, the location of the stopped automobile on highway No. 55, and to the skid marks. Still another witness also observed the skid marks. It is very clear that the jury was permitted reasonably to infer that Oates' automobile did not stop at or near to the west line of the concrete on highway No. 55 where an effective lookout could have been made. The fact that his brakes squeaked, and that his car skidded ten or twelve feet on the concrete, indicates that before he applied his brakes he was going much faster than he could have been going had he started up in low as he asserted, at the westerly edge of the concrete. It also appears that one Kaehny testified that he talked to Oates after the accident. He asked him how the accident happened and Oates said:

"I stopped by the stop sign and started out again. All of a sudden I saw this truck in front of me. I was so scared; I didn't know what to do. By that time, everything was over with."

In view of the testimony of the disinterested witnesses as to the squeaking brakes and as to the skid marks, supplemented by the testimony as to what Mr. Oates stated in explanation of the accident, it was clearly permissible for the jury reasonably to infer that Oates did not stop near to the edge of the concrete on No. 55 or at a place where an efficient observation or lookout could have been made. It is the law of this state that one must not only stop before entering upon an arterial highway, but he must stop and observe where an efficient observation may be had. As was said in *Svenson v. Vondrak,* 200 Wis. 312, 316, 227 N. W. 240:

"We agree with the statement of the court that it is the duty of one approaching an arterial highway to stop at a point somewhere between the stop sign and the arterial where one may efficiently observe traffic approaching on the

arterial highway." See also *Pettera v. Collins,* 203 Wis. 81, 233 N. W. 545.

It is our opinion, therefore, that the evidence clearly supported the inference of the jury that Oates was negligent in respect to lookout.

We are also of the opinion that the jury was well warranted in finding that Oates was negligent in respect to yielding the right of way to Koepke. Entering upon highway No. 55, after having made what may well have been considered by the jury as an inefficient or careless observation, at a time when the large truck was approaching at a rate of about thirty miles an hour, as testified to by Koepke, and when the truck was between eighty to one hundred feet away from the point of his entering upon highway No. 55, permits of the inference that Oates, in not waiting a few seconds to permit the truck to pass, was negligent in not yielding the right of way to the truck. *Gauthier v. Carbonneau,* 226 Wis. 527, 277 N. W. 135.

As to causation, assuming that the jury was warranted in inferring that Oates was negligent in respect to lookout and in not yielding the right of way, there can be no question that such negligent acts permitted the jury to infer that Oates' negligence in the respects found, were causes of the accident and the damages to the plaintiffs' garage. Koepke undoubtedly was confronted with what seemed to him an emergency. Concededly he could not have passed Oates' automobile on the left. He might have passed Oates' automobile on the right side thereof, had his speed been greatly reduced. In turning off onto the private road he sought to avoid colliding with Oates' automobile which, according to the testimony of several of the witnesses, was stopped in the middle of highway No. 55. His action was rather heroic. Had the truck not struck a rock by the telephone pole, causing complete loss of control of it, in all probability no damage would have resulted.

It is our opinion that the trial court erred in changing the answers and in dismissing the cross complaint against the defendants, Oates and American Automobile Insurance Company.

*By the Court.*—Judgment reversed, and cause remanded with directions to reinstate the answers of the jury and to render judgment on the cross complaint in accordance with the opinion.

A motion for a rehearing was denied, with $25 costs, on May 17, 1938.