Stelzner, Appellant, vs. Boehme, Respondent: Lumber-men's Mutual Casualty Company, Interpleaded Defendant and Appellant.

*April 12—May 9, 1939.*

The cause was submitted for the appellants on the brief of *Laus & Cook* and *Bouck, Hilton, Kluwin & Dempsey,* all of Oshkosh, and for the respondent on that of *Albert H. Krugmeier* of Appleton.

MARTIN, J.    The appellants contend that Boehme was guilty of negligence as a matter of law, and that the court erred in not changing the several answers, "No" to "Yes," to the first question of the special verdict, which answers as returned by the jury exonerated Boehme of negligence as to lookout, control, and management of his truck, failing to yield the right of way to the driver of the plaintiff's truck, as to entering the intersection in the face of imminent danger, and as to stopping for the arterial.    Appellants also contend that the court should have answered all of the subdivisions of question 2 as to causation, in their favor, in the several respects in which they claim Boehme was negligent as a matter of law.    Appellants further contend that

the court should have changed the answers of the third question of the special verdict from, "Yes" to "No," by which answers the jury found Johnson negligent as to speed, lookout, control, and management of the truck he was driving, and in failing to yield the right of way to the defendant, Boehme; also that the court should have set aside the answer "Yes" to the fourth question of the special verdict which found that each act of negligence on the part of Johnson was a proximate cause of the collision. The appellants further contend that the court erred in not granting a new trial upon the apportionment of negligence only as between defendant, Boehme, and the operator of the plaintiff's truck. In considering the alleged errors, we deem it necessary to state the facts fully.

United States Highway No. 41 is an arterial highway, surfaced with concrete, twenty feet wide, with a shoulder seventeen feet wide on each side of the concrete surface. Spencer road is surfaced with tarvia and gravel and is twenty feet in width. It intersects United States Highway No. 41 at a right angle. On and prior to the date of the accident, the plaintiff-appellant was engaged in hauling coal between Green Bay and Oshkosh, using therefor an International truck and trailer, having a capacity of approximately twenty-two thousand pounds. The total weight of the truck and trailer, loaded as it was on the day of the accident, was thirty-five thousand seven hundred forty pounds. As loaded on the day in question, plaintiff's truck and trailer had a maximum speed of between thirty and thirty-five miles per hour. The Boehme truck, empty, weighed three thousand two hundred pounds. It was empty at the time of the collision. Its wheel base was nine feet nine inches. Plaintiff's truck and trailer approached the intersection from the north. Boehme's truck approached from the east. There was an arterial stop sign located on the north side of Spencer road, twenty-six feet east of the easterly edge of the concrete on Highway No. 41. The pavement upon both highways was

dry; the day was clear; and the collision occurred at about 1 p. m., on December 1, 1937. From a point on Highway No. 41, about one thousand feet north of the intersection, there is a gradual drop in the road level down to the intersection. Defendant, Boehme, was engaged in buying and selling livestock, transporting such stock as he would buy in the truck he was driving when the collision occurred. For a distance of more than eight hundred feet in all directions from the intersection the view was unobstructed so that a person approaching said intersection on either highway had a clear view in all directions. There were no witnesses to the collision aside from the respective operators of the trucks. Johnson testified that he first saw the Boehme truck when he (Johnson) was about fifteen hundred feet north of the intersection, and at that time the Boehme truck was about eight hundred feet east of the intersection. Johnson further testified:

"I observed Boehme's car as I proceeded south. When I first saw the truck I released my foot off the gas. I left the motor hold the truck back coasting down the road. I kept observing Boehme after that. He just kept on coming on Spencer road. His speed was probably twenty miles an hour, maybe a few miles less, something like that. . . . Boehme kept on driving. He did not stop before entering the intersection. I am positive he did not stop. I realized I was in danger of an accident when within fifty to one hundred feet from the corner—from the intersection. I saw Boehme wasn't stopping. He kept on driving. I applied all three brakes. Boehme drove onto the highway in front of me, and the cars collided. The left front corner of my truck hit the rear right wheel of Boehme's truck. The collision occurred on the west side of the concrete pavement on Highway No. 41."

Boehme testified that he stopped his truck at the stop sign; that he then made an observation on Highway No. 41, to the north of the intersection; that he had not observed the plaintiff's truck approaching before he stopped at the stop sign; that the plaintiff's truck was then between four hun-

dred and four hundred fifty feet north of the intersection; that he then put his truck in second gear and proceeded ahead, intending to proceed west on Spencer road from Highway No. 41; that he thought he had time to cross the intersection because of the distance the plaintiff's truck was away from the intersection. He further testified that he made a second observation as the front wheels of his truck came upon the east edge of the concrete on Highway No. 41, and at that time, plaintiff's truck was from one hundred fifty to two hundred feet north of the intersection; that he believed he could cross the intersection ahead of the plaintiff's truck. Upon cross-examination he testified:

"*Q.* The fact is you saw this truck coming and it was so close to you you made up your mind you couldn't get across safely unless you increased the speed of your car, isn't that right? *A.* Not the way you put it, no. I thought I had ample time to cross, by trying to get across and I put on more gas.

"*Q.* But didn't you know that if you continued at the same speed you might be hit before you got across? *A.* I don't know. It was coming fast but I tried to get out of the way.

"*Q.* Didn't it occur to you to stop where you were? *A.* No.

"*Q.* Just go right ahead? *A.* Go ahead because I thought I had ample time yet to cross."

Whether Boehme stopped as he approached the intersection as he testified, or whether he failed to stop as testified to by Johnson, presented a clear-cut issue for the jury. The jury found that the defendant did stop for the arterial. The jury also found that plaintiff was negligent in failing to yield the right of way to the defendant. It is clear that defendant was first to enter the intersection and had the right of way in the intersection under sec. 85.18 (1), Stats. Sec. 85.18 (1) provides:

"When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on

the left shall yield the right of way to the vehicle on the right, except as otherwise provided in this section. The driver of any vehicle driving at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder. The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle *within* such intersection and turning therein to the left across the line of travel of such first-mentioned vehicle; provided, the driver of the vehicle turning left has given a plainly visible signal of intention to turn as aforesaid."

Sub. (4) provides:

"The operator of any vehicle that has come to a full stop as required by section 85.69, upon entering an artery for through traffic, as well as operators of vehicles on such artery for through traffic, shall be subject to the provisions of subsection (1)."

Though defendant was first to enter the intersection, he might have been negligent in proceeding across said intersection in front of plaintiff's oncoming truck, but we are of the view, after carefully considering the evidence, that the jury had a right to conclude that at the time defendant's truck entered upon the east half of the concrete surface upon Highway No. 41, plaintiff's truck was then from one hundred fifty to two hundred feet north of the north line of said intersection. Defendant believed that plaintiff's truck was a reasonably safe distance from the intersection to allow him to pass safely across, ahead of the oncoming truck. In *Nelson v. Klemm,* 210 Wis. 432, 245 N. W. 657, a highway intersection collision case, the court said at page 435:

"The case resolves itself into this question: Is a driver, approaching the intersection of two country highways, who makes a single observation at a point seventy to eighty feet from the intersection, and thereafter crosses the intersection without a second look, guilty of contributory negligence as a matter of law, in spite of the fact that his view was unobstructed at the point where the observation was made and that the observation had disclosed the presence of the other car on the intersecting highway proceeding at such a distance from the intersection and at such a speed as to

lead him to conclude that he could safely clear the intersection ahead of it? It may be that there is some point beyond which *it could be said as a matter of law* that a final observation could not be made in the exercise of due care, no matter what the observation disclosed, but whether this is true or not, and it is unnecessary to determine this here, we cannot say as a matter of law that a point seventy to eighty feet from the intersection is beyond this limit under all the circumstances of this case."

In *Gumm v. Koepke*, 227 Wis. 635, 278 N. W. 447, the plaintiffs sued Koepke, the owner of the truck Koepke was driving, and the insurance carrier, for damages caused to their garage by the truck driven by Koepke. The garage building was located near and on the east side of State Trunk Highway No. 55. Koepke drove his truck into a private driveway leading to the plaintiffs' garage to avoid a collision between his truck and the automobile of one Oates, an interpleaded defendant. Shortly before the accident, Koepke was driving his truck in a southerly direction on Highway No. 55, at a speed of about thirty miles an hour. Oates was driving his automobile in an easterly direction on Highway No. 60, intending to turn north on Highway No. 55. Oates testified that he stopped at the "stop" sign which was located on the right side of Highway No. 60, at a point about ninety feet from the west side of the concrete on Highway No. 55; that he then drove his automobile up to the edge of the concrete on Highway No. 55, where he again stopped; that he looked to his left and observed the truck approaching at a distance which he estimated to be one hundred fifty to two hundred feet; that he started forward in a northeasterly direction, and then observed that the Koepke truck was turning to its left, onto his side of the road; that he thereupon applied his brakes and stopped his automobile with only the left rear wheel west of the center line of Highway No. 55; that the Koepke truck then turned into the private driveway and shortly thereafter crashed into the northerly side of the plaintiffs' garage. The jury found Koepke negli-

gent in respect to speed; in respect to control; and causation; also found Oates, the interpleaded defendant, negligent in respect to lookout; in respect to yielding the right of way; and causation. After verdict, Oates moved to change the answers of the jury which found him negligent in respect to lookout; in respect to not yielding the right of way; and in respect to causation. The trial court so changed the jury verdict, and judgment was entered dismissing the cross complaint against Oates. At page 642 the court said:

"We are also of the opinion that the jury was well warranted in finding that Oates was negligent in respect to yielding the right of way to Koepke. Entering upon Highway No. 55, after having made what may well have been considered by the jury as an inefficient or careless observation, at a time when the large truck was approaching at a rate of about thirty miles an hour, as testified to by Koepke, and when the truck was between eighty to one hundred feet away from the point of his [Oates] entering upon Highway No. 55, permits of the inference that Oates, in not waiting a few seconds to permit the truck to pass, was negligent in not yielding the right of way to the truck. *Gauthier v. Carbonneau,* 226 Wis. 527, 277 N. W. 135."

This court reversed the judgment of the lower court with directions to reinstate the answers of the jury and to render judgment on the cross complaint against Oates. In this case, no contention was made that Oates was negligent as a matter of law. His negligence was held to be an issue for the jury. To the same effect see *Canzoneri v. Heckert,* 223 Wis. 25, 29, 269 N. W. 716; *Zutter v. O'Connell,* 200 Wis. 601, 229 N. W. 74.

Appellants contend that the decision in *Rock v. Sarazen,* 209 Wis. 126, 244 N. W. 577, is particularly applicable in the instant case. While this case arose out of a collision between the plaintiff's automobile and defendant's truck at an arterial highway intersection, though the jury verdict was in favor of the plaintiff who had judgment thereupon, this court reversed the judgment notwithstanding the verdict

and dismissed the plaintiff's complaint. We think the facts are clearly distinguishable from those in the instant case.

In *Geyer v. Milwaukee E. R. & L. Co.* 230 Wis. 347, 350, 284 N. W. 1, an intersection collision case, the court said:

"One who on approaching a street intersection is thirty-five feet or more from the line of travel of an oncoming automobile [bus] coming from his right and to whom he owes the right of way, jumps at the conclusion that the automobile is one hundred feet away when it is in fact not more than seventy, believing that it is traveling twenty miles an hour and he ten, 'feels' that he has time to pass ahead of it, is not exercising a reasonable judgment, and nothing short of reasonable and considerate judgment can justify failure to yield right of way. One so acting is taking a chance, is inviting injury."

Upon the physical facts and the evidence in the instant case, whether the defendant exercised a reasonable judgment in concluding that he had ample time to cross the intersection in view of the distance plaintiff's truck was north of the intersection, was for the jury to say. The trial court properly instructed the jury as to right of way at the intersection. No error is assigned because of instructions given. Appellants do assign error because of the court's refusal to give the following instructions:

"1. Assuming that defendant stopped at the arterial at the point he claims, he was then twenty-six feet from the concrete portion of Highway No. 41 with the plaintiff's large truck and trailer approaching from the right at what defendant claims to have been a very high rate of speed and was, in fact, so close to him that it collided with his truck on the west half of the roadway, permits of the inference that Boehme, in not waiting a few seconds to permit the truck and trailer to pass was negligent in not yielding the right of way to plaintiff's truck.

"2. It is a matter of common knowledge that the operator of the vehicle traveling at the rate of five miles per hour, with efficient brakes and on a dry surface that the operator can bring the automobile to a complete stop within a distance of less than ten feet. These measurements include the so-called reaction time."

These requested instructions are argumentative and partisan. They were properly refused. The instructions given by the court covered all of the issues in the case.

We cannot say that defendant was negligent as a matter of law in any respect in which the jury exonerated him from negligence. On the other hand, there is credible evidence to sustain the jury's findings as to plaintiff's negligence and causation. It is elementary that if there is credible evidence that supports the jury's findings, the answers must stand. It is our conclusion that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.