Koniecko, Appellant, vs. Huffman, Respondent.* .

*October 6—November 3, 1953.*

* Motion for rehearing denied, without costs, on December 30, 1953.

For the appellant there was a brief by *Reuben A. Gorsky,* attorney, and *Baumblatt, Hardy & Storms* of counsel, all of Racine, and oral argument by *L. P. Baumblatt.*

For the respondent there was a brief by *Heft, Brown, Stewart & Coates* of Racine, and oral argument by *Glenn R. Coates*.

FRITZ, C. J.   The action brought by the plaintiff Olympia C. Koniecko was to recover damages sustained by her as the result of the death of her husband in a collision on Highway 32 between an automobile operated by plaintiff's husband and a motor tractor-trailer combination operated by the defendant Brady Huffman on Highway 32. At the place of the accident there was a concrete highway, consisting of three 10-foot lanes running north and south; and in addition to said 30-foot-wide concrete, there was a seven-foot-wide shoulder on each side of the concrete. On the west side of the highway there was the Sampsell farm with an eight-foot-wide driveway running in an easterly and westerly direction, that widened in a V shape to 32 feet wide as it reached the 30-foot-wide concrete highway. That highway sloped downgrade from a point 850 feet north of the Sampsell driveway to a point 1,000 feet south of said driveway; and the area zoned there as to speed was limited to 50 miles per hour.

The over-all length of Huffman's tractor-trailer combination was 42 feet. He had just loaded some hay, which he purchased from Roger Green at the Sampsell farm. He then drove easterly on the Sampsell driveway, and after first stopping at the highway, Huffman drove his tractor-trailer out of the Sampsell driveway. He testified that he made an observation to the north and south and saw nothing; that he then drove into the right lane, with the right rear wheel of the tractor dropping off the south edge of the culvert as Huffman made the sharp turn. At the same time Roger Green was following defendant's tractor-trailer out of the Sampsell driveway, and Green stopped his car eight or 10 feet from the west edge of the highway, with his lights shining across the highway, although tilted somewhat to the

south. He did not know if they were deflected or not. About 1,000 feet to the south a car was then approaching, traveling north. There was evidence that from the driveway one had a view at night with lights approaching to the north of approximately 850 feet, just beyond the crest of a slight hill curving to the east.

The accident occurred about 6:45 p. m. on October 4, 1951. It was dark and cloudy, but dry. Plaintiff's husband, who was immediately killed as a result of the accident, approached the Sampsell driveway in his 1950 Pontiac sedan from the north on Highway 32. The lights of the car of plaintiff's husband were on and were bright. He drove his car into the left side of defendant's tractor-trailer and blew out the defendant's left rear tire; and stopped at the point of impact. There were skid marks leading up to the front wheels of the Pontiac sedan in the center lane, which were about 56 feet long. The Pontiac car on colliding with the trailer turned to the east and stopped with the rear end practically in line with the south end of the Sampsell driveway as it widens into the road; and there were 16 feet, by actual measurement, from the center of the Sampsell driveway to the right rear fender of the deceased's automobile. As a result of the accident plaintiff's husband died without regaining consciousness.

In a special verdict the jury found:

(1) That defendant, Brady Huffman, did not fail to exercise ordinary care with respect to lookout; and with respect to yielding the right of way.

(2) That plaintiff's husband failed to exercise ordinary care with respect to lookout, with respect to speed, and with respect to management and control of his automobile.

(3) That each of said failures of plaintiff's husband to exercise ordinary care with respect to lookout, excessive speed, and management and control was a cause of the collision.

There was ample credible evidence to sustain the findings of the jury that the defendant Huffman was not negligent with respect to lookout, and with respect to yielding the right of way. It is elemental that the findings of the jury should be sustained if there is credible evidence to support said findings. And when the evidence is conflicting, and there is credible evidence to support the verdict, it should not be disturbed upon appeal in the absence of some legal error. *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 228 N. W. 741; *Earl v. Napp,* 218 Wis. 433, 261 N. W. 400; *Steubing v. L. G. Arnold, Inc.,* 210 Wis. 513, 246 N. W. 554.

There were eyewitnesses to the accident available to the plaintiff but their testimony was not offered by her counsel because it evidently was overwhelmingly against her. They rested her case at the trial, and upon this appeal, almost solely upon photographs taken after the accident. Their argument is, that from the pictures alone, only one conclusion is possible, viz.: That the defendant drove into Highway 32 directly in front of the deceased's oncoming automobile. All of the appellant's arguments as to lookout and right of way are based upon that false premise. Plaintiff's conclusion from the pictures, and from the position of the vehicles, is invalid and false because the necessary factors of speed and time are omitted. When all of the testimony is considered in conjunction with the photographs, the only conclusion is that reached by the jury and approved by the court.

As Judge GOODLAND stated: "Taking the testimony of the defendant's witnesses and the testimony of the deputy sheriffs, the point of impact was some 30 to 35 feet from the center of the private driveway. The length of the tractor-trailer is 40 to 42 feet, this would place the distance the tractor-trailer had traveled at approximately 75 feet from the point where the defendant stopped to observe approaching traffic. The deceased, traveling at 60 to 65 miles per hour while the defendant was moving at four to five miles per hour, would cover at least 12 to 15 times the distance that the defendant

would cover in the same length of time. This would place the deceased approximately 900 to 1,100 feet north of the driveway at the time the defendant moved onto the highway, without considering any time factor for the defendant to maneuver his tractor-trailer into a right turn on the highway. The jury could well believe that at the time the defendant entered the highway the deceased was beyond the crest of the hill to the north and could not be seen by the defendant when he pulled into the highway."

As stated in *Kleckner v. Great American Indemnity Co.* 257 Wis. 574, 577, 44 N. W. (2d) 560:

"The probative value of the testimony of witnesses is not destroyed by physical facts unless the physical facts are irrefutably established and permit of only one deduction. 'So frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except where they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other.' "

Likewise in the case at bar, the unexplained photographs are not such as to require the jury to disbelieve the testimony of the witnesses Roger Green, Walter Leonard, and Brady Huffman. The plaintiff's physical facts, which are disputed, do not permit of only one deduction and the questions involved were peculiarly for the jury. There is no proof in the record that the deceased's automobile was visible south of the crest of the hill when the defendant Huffman emerged from the driveway. All of said three witnesses testified that there were no cars visible upon the highway at that time. It is undisputed that Huffman could see to the north 850 feet, and that he looked to the north before entering the highway. It cannot be said that he failed to see what was in plain sight because the only proof in that respect establishes that the deceased was beyond the hill to the north when the defendant's car was turning to the south, and the deceased's car was not in sight to be seen. To hold that the defendant failed

to yield the right of way would lead to the absurd result that he could never enter the highway since he could not see beyond the hill 850 feet away. There were no visible cars approaching. Defendant entered the highway, completed his turn, and was traveling southerly in the right lane of the three-lane highway, in a proper manner when he was struck in the rear by the deceased, traveling at an excessive rate of speed.

*By the Court.*—Judgment affirmed.

The following opinion was filed December 30, 1953:

PER CURIAM (*on motion for rehearing*). The plaintiff, in addition to moving after the verdict that the same be set aside and a new trial granted on the ground that certain answers to the jury were contrary to the great weight and clear preponderance of the evidence, also moved for a new trial on the following two grounds:

(1) The jury's actions in assessing the damages for plaintiff wife's pecuniary loss for the death of her husband establish perverseness; and

(2) Improper argument to the jury by defendant's counsel.

Counsel for plaintiff, in their brief in support of plaintiff's motion for rehearing, call attention to the fact that our original opinion fails to discuss these two issues although the same were properly raised in their original brief. We assure counsel that such two questions did receive our careful consideration, although not noted in our prior opinion, and we concluded that the learned trial court correctly denied the motion for new trial based on said grounds.

The jury, although properly instructed as to the necessity of answering the damage questions in the special verdict regardless of how the negligence questions were answered, at first returned a verdict in which they failed to answer the

subdivision of the damage question relating to plaintiff's pecuniary loss. The jury were sent back to the jury room and then returned a second time with their verdict whereby they had written the word "None" in the blank inserted in said subdivision for their answer. The trial court again sent the jury back with instructions that they must answer such subdivision by inserting "therein an amount which you [the jury] consider to be fair and just in view of all the evidence." The jury then returned their verdict for the third time, and, in such verdict as so finally returned, the jury assessed the amount of $8,000 as plaintiff's pecuniary loss.

In the trial court's memorandum opinion rendered upon plaintiff's motions after verdict, in passing on the contention that the foregoing facts establish perverseness on the part of the jury, it was stated:

"The jury apparently were of the opinion that because they had absolved the defendant from any negligence and found the deceased driver was 100 per cent responsible for the accident that it was not necessary to answer the damage question."

The statements made by the foreman of the jury to the trial court at the time the jury returned their verdict the second time substantiate this conclusion of the trial judge, and tend to negative the claim of perverseness. There was no abuse of discretion on the part of the trial court in finding that no perverseness was established.

We next turn to the contention that one of defendant's counsel was guilty of making improper remarks in his argument to the jury, which necessitates the granting of a new trial. In such attorney's opening statement to the jury, before the presentation of testimony, he stated that the evidence would show that plaintiff's husband (the deceased driver) had been indulging in intoxicating liquor shortly before the accident. During the course of defendant's proof,

a physician was called to testify to a chemical analysis of the blood of the deceased in an attempt to prove that the deceased was intoxicated at the time of the accident. However, the doctor was unable to identify the blood he had examined as being that of the deceased, and counsel for defendant dismissed the witness without the results of the blood test being testified to. Plaintiff's counsel, in his subsequent argument to the jury, remarked about the failure of defendant's proof to live up to the assertion made by defendant's attorney in his opening statement that the evidence would show that the deceased was intoxicated. In reply thereto, defendant's counsel, in his argument, stated:

"I am sorry this matter of intoxication came up. I am sorry I couldn't bring the facts before you."

Objection to such quoted statement was promptly made, and the trial court properly instructed the jury to disregard the same. The court later, in its formal instructions, further admonished the jury to disregard any "statement which has been made in this case which the court has ordered you to disregard." In the trial court's memorandum opinion passing on the motions after verdict, it was stated as the trial court's conclusion that the improper statement of defendant's counsel did not prejudice the jury and was not sufficient to justify the granting of a new trial.

We deem this to have been a matter peculiarly for the determination of the trial court and that we, therefore, will not disturb it on this appeal. Sometimes the improper statements of counsel made in argument to the jury are so prejudicial that the instructions of the trial court to disregard them cannot remove the prejudice, but we do not deem the objectionable statement in this instance to be of that category.

The motion for rehearing is denied without costs.