STUART and wife, Appellants, vs. WINNIE, Respondent. [Two cases.]

*January 10—February 5, 1935.*

*J. E. O'Brien* of Fond du Lac, for the appellants.
*C. A. Markham* of Beaver Dam, for the respondent.

FRITZ, J. The first error assigned is that the court erred in striking the designation "The Western Insurance Com-

panies" from the title of the action, as it was stated by the court on the form submitted to the jury for a special verdict. In the summons and in the complaints, which were served on one Rice, a general claim agent of the Western Casualty & Surety Company, the plaintiffs designated, as a party defendant, "The Western Insurance Companies," which plaintiffs alleged was a foreign corporation that had issued an automobile liability policy to the defendant Winnie. His answers promptly denied knowledge or information as to whether The Western Insurance Companies was a corporation, and also denied that he had any policy of insurance with that named defendant, or that it was a party in interest herein. Ten days prior to trial, Winnie noticed a motion in which he asked, (1) for a separate trial as to the issue which his answer raised in respect to insurance coverage; (2) that the name "The Western Insurance Companies" be stricken from the records; and (3) that no reference be made to that name in the special verdict. Upon hearing that motion before drawing a jury, the court denied the relief sought by Winnie, but restricted the manner in which an insurance carrier could be referred to on the *voir dire* examination of jurors. Subsequently, on a renewal of Winnie's motion before the submittal of the issues to the jury, the court ruled that the designation "The Western Insurance Companies" was to be omitted from the title on the form for the verdict.

In connection with Winnie's motion, it appeared, without conflict, that Winnie, as well as the plaintiff Earlene Stuart, carried automobile liability insurance under contracts with the Western Casualty & Surety Company, and insurance against loss by fire or theft under contracts with the Western Fire Insurance Company. Those insurers were corporations whose principal offices were in Fort Scott, Kansas. They combined their respective contracts in one document, entitled "Combined Automobile Policies," which had appropriate provisions as to the particular type of insurance and the respec-

tive liability of each carrier. Near the top of the first sheet of that document, there was, in conspicuous type, the name of one corporation near the right edge of the sheet, and the name of the other corporation was near the left edge; and between those names, so printed, there was a trade-mark design in which there were the words "Western Insurance Companies." It does not appear that there is any corporation which is so named. At all events, Winnie did not carry a policy issued by a corporation so named, and had done nothing to mislead the plaintiffs. On the contrary, his prompt denial in his answers of any knowledge as to whether there was a corporation so named, and his denial that he had any policy of insurance issued by a corporation so named, or that it had any interest in this action, and likewise his timely motion for a separate trial as to the issues raised by his answer in those respects, and to have that name stricken from the records as a party defendant, gave plaintiffs timely and fair notice to investigate and to make such corrections as were necessary to recover herein from Winnie's insurance carrier. Under the circumstances, Winnie was clearly entitled to have his motions granted at the outset of the trial, and the court rightly omitted the words "The Western Insurance Companies" from the title of the action in preparing the form for the special verdict.

The second error assigned is the court's denial of plaintiffs' motions to change certain answers of the jury in the special verdict, or, in the alternative, to grant a new trial for perverseness and inconsistency in the verdict. Earlene Stuart was injured on January 23, 1932, while riding in her automobile, which was being driven by her son and agent, George Stuart, Jr., in a westerly direction on a public highway, as the result of a collision with an automobile which Winnie was driving southward on an intersecting public highway. The jury found that of the total negligence, which caused the collision, fifty per cent consisted of negligence on the part of

George Stuart, Jr., as to, (1) speed, (2) control, and (3) yielding the right of way, but (4) that he was not negligent as to lookout; that forty per cent consisted of negligence on the part of Winnie as to, (1) lookout, but that he was not negligent as to (2) speed, (3) control, or (4) yielding the right of way; and that ten per cent consisted of negligence on the part of Earlene Stuart as to, (1) keeping a proper lookout, and (2) giving a timely warning to George Stuart, Jr. Credible evidence warrants, or at least admits of inferences in support of, those findings to such an extent that it was not within the province of the trial court to grant plaintiffs' motions to substitute other answers for those returned by the jury. *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 228 N. W. 741. Thus the jury's finding that George Stuart, Jr., was negligent in not yielding the right of way was warranted by evidence that he was ten to fifteen feet east of the east line of intersection when Winnie was at or just past the north line of the intersection, or about sixteen feet north of where the collision occurred, slightly south and west of the center of the intersection. If the jury believed that the cars were respectively in those positions before Stuart had reached the east line of intersection, then the jury was warranted in finding that Stuart, in the exercise of ordinary care, should have yielded the right of way to Winnie. Likewise, the jury's finding that Stuart was negligent as to speed and control was warranted by evidence and permissible inferences that, while Winnie, approaching the intersection at twenty-five miles per hour, traveled the last sixteen feet up to the point of collision, Stuart drove forty feet, which would be about sixty miles per hour; that he did not apply his brake or try to stop or turn sufficiently to the left or to the south to enable Winnie to pass; and that Stuart was driving at such speed and with such lack of control that he was unable to stop until fifty feet beyond the place of collision, after crossing a ditch on the south side of the road and going into a field. The

negligence of Stuart in each of those respects could rightly be considered a cause of the collision.

On the other hand, although Winnie was clearly negligent as to lookout, the jury was warranted in finding that he was not negligent in not yielding the right of way, in view of the evidence that he was at the north line of intersection, or within one rod of the point of collision, when he saw Stuart's automobile approaching ten to fifteen feet east of the east line of intersection. Likewise, the jury was warranted in finding that Winnie was not negligent as to the speed or control of his automobile (as distinguished from his negligence as to lookout, in failing to make any observation to the east while approaching over the last two hundred feet north of the intersection, during all of which time and distance he could readily have seen Stuart approaching), in view of the facts that, within the time that Stuart traveled forty feet, Winnie went only sixteen feet and brought his car to a stop at the southwest corner of the intersection, with only his rear wheels to the south of the traveled portion of the east and west highway. Furthermore, the differences in the distances and the obstacles over which each of the automobiles went after the impact, and their respective positions upon finally coming to a stop, also indicate that Stuart's automobile was proceeding with greater momentum and under less control than Winnie's automobile.

In respect to Earlene Stuart, her testimony that she did not see anything at all of Winnie's approach to the intersection and did not recall seeing him before he entered the intersection (even though contradicted by other testimony given by her), and that she did not warn her son of danger, warranted the jury's finding that she did not keep a proper lookout, and did not give timely warning to her son. The jury's finding that her negligence in those respects was also a cause of the collision may be somewhat inconsistent with the jury's finding that her son was not negligent as to lookout, because, if

the latter finding was made because the jury believed that her son had duly observed and was aware of Winnie's approach, then there was no occasion for his mother to warn him, and her negligence in those respects should not be considered a cause of her injury. However, there is no fatal inconsistency between the possibly erroneous finding that her negligence was also a cause of her injury and the jury's other findings that the negligence of George Stuart, Jr., otherwise than as to lookout, viz., as to speed, control, and yielding the right of way, contributed to the extent of fifty per cent as causes of that injury. The propriety of the latter findings is not impaired in any respect by any possible inconsistency between the findings that the mother's negligence was a cause of her injury, and the other finding that her son had not been negligent as to lookout. Neither does that inconsistency necessarily establish such a perverse or prejudicial attitude on the part of the jury toward the plaintiffs as to entitle them to a new trial on that ground. The jury's findings that George Stuart, Jr., was not negligent as to lookout, but that Winnie was negligent as to lookout, and that, because of his negligence in that respect, forty per cent of the entire negligence which caused plaintiffs' damage was attributable to him, coupled with the liberal manner in which the jury assessed the damages in favor of the plaintiffs, convincingly demonstrates, and undoubtedly satisfied the court, that the existence of any such attitude toward the plaintiffs was highly improbable.

On the other hand, if, in view of that alleged inconsistency, the findings that Earlene Stuart's negligence was a cause of her injury are entirely disregarded, there would still remain the unimpaired finding that at least fifty per cent of the total causal negligence was attributable to George Stuart, Jr. As he was driving Earlene Stuart's automobile as his mother's agent, she is chargeable with that fifty per cent of the entire

negligence. As that fifty per cent was as great as the remainder of the entire one hundred per cent could possibly be, even if, because of wholly disregarding the ten per cent which the jury attributed to Earlene Stuart, all that remainder was to be deemed attributable to Winnie, she still would not be entitled to recover from Winnie under the comparative negligence statute. Sec. 331.045, Stats. Consequently, the judgment dismissing Earlene Stuart's complaint was proper.

However, on behalf of George Stuart, Sr., it is contended that, notwithstanding the decision in *Callies v. Reliance Laundry Co.* 188 Wis. 376, 206 N. W. 198, 42 A. L. R. 712, the contributory negligence of Earlene Stuart's agent in driving her automobile should not be held to bar the recovery from Winnie of the damages sustained by George Stuart, Sr., on account of his loss of his wife's services, and his expenses for her medical treatment, etc. Most of the reasons urged in support of that contention were considered and convincingly disposed of in the decision in the *Callies Case,* and no sufficient reason is now advanced for overruling that decision. As was then held, the husband's loss, due to the loss of his wife's services and to his expenditures for her medical treatment, etc., arise out of her cause of action for the tort which caused personal injury to her; and, but for the existing marital relation and his resulting obligations and rights, she alone would be entitled to recover for the loss sustained on account of those items. Because of that marital relation and those resulting obligations and rights, that part of her cause of action which is for recovery on account of those items is deemed, by operation of law, to be assigned to the husband, but in thus deriving that part of her cause of action from her, it continues in him subject to all such defenses as existed against her in whom the cause of action would otherwise have vested in its entirety. The part so assigned can have no better standing in court than the part not assigned. Neither the

whole nor a part of the cause of action can be purged by merely a legal transfer or assignment from contributory negligence whenever that exists. That result is not based on the theory of imputed negligence, but is in accord with the familiar principle of law that the assignee of a cause of action stands in the shoes of the assignor.

*By the Court.*—Judgments affirmed.