Duss, Administratrix, Appellant, vs. Friess and others, Respondents.

*April 28—September 14, 1937.*

*Clarence E. Rinehard* of Chippewa Falls, for the appellant.

For the respondents Louis Badzinski and the Farmers Mutual Automobile Insurance Company there were briefs by *Farr & MacLeod* of Eau Claire, attorneys, and *Richmond, Jackman, Wilkie & Toebaas* of Madison of counsel, and oral argument by *L. E. Hart* of Madison.

For the respondents Albert Friess, Herman Friess, and Gust Beckman there were briefs by *Culbertson & McPhee* of Stanley and *Doar & Knowles* of New Richmond, and oral argument by *James McPhee*.

The following opinion was filed May 25, 1937:

NELSON, J. The plaintiff contends that the court erred, (1) in changing the answers of the jury to questions 1 and 2 which found that the defendant, Louis Badzinski, was

negligent, and that such negligence was a cause of the collision and the plaintiff's injuries; (2) in holding that the pecuniary damages as found by the jury were excessive; and (3) in changing the answer to question 7 which found that the plaintiff did not assume the risk of defendant Badzinski's driving.

On January 1, 1936, at about 11 o'clock in the forenoon, plaintiff's intestate was riding as a guest in a Dodge pickup truck belonging to Badzinski and driven by him in a westerly direction along State Highway No. 29. The day was cloudy but not very cold. Prior to and at the time of the accident, it was snowing. The snow was sufficiently wet to cling to the windshield, although it readily yielded to the windshield wiper on Badzinski's side of the truck. At the same time Beckman was driving a Chevrolet automobile along said highway in an easterly direction. The car belonged to the defendant, Albert Friess. His father, Herman Friess, was riding in the front seat. Attached to the Chevrolet was a two-wheel open farm trailer in which a seven-hundred-pound bull was being transported. The cars collided at a point about one hundred fifty feet from the crest of a knoll and on the easterly slope thereof. The principal damage to the cars was at their right front ends. The damage to the Chevrolet was confined to the bumper, the right side of the radiator, right light, right fender, right wheel, and the right side of the windshield. The damages to Badzinski's truck were substantially the same except the front of the radiator or radiator screen was more extensively damaged and the bumper of the truck was damaged considerably more than the bumper of the Chevrolet. The windshield of the truck was broken. The Chevrolet came to rest on the north side of the highway with the two right-hand wheels on the concrete and facing in an easterly direction. The Dodge truck came to rest on the south side of the concrete partly off and partly on it and facing also in an easterly direction.

The trailer was connected with the Chevrolet by means of a blacksmith-made "hitch" about three feet long. This "hitch," as a result of the collision, was bent downward at an acute angle so that the apex thereof dragged on the highway and made a well-defined track from a point on the south side of the black line across the black line and to the place where the truck and the trailer came to rest. There was broken glass found on the north side of the black line. The defendants, Herman Friess and Gust Beckman, both testified that at the time of the collision their windshield was clear, their automobile being equipped with an effective wiper, a heater, and a fan. As they came to the top of the knoll, they saw Badzinski's truck approaching them. Beckman and Friess both testified that they observed that Badzinski was approaching them on their side of the highway; that Beckman sounded his horn; that Badzinski made no response to it but kept coming toward them on the wrong side of the road; that when Beckman thought that a collision was imminent he turned his car abruptly to the left in an effort to avoid a collision; that just before the collision Badzinski turned his truck somewhat in the same direction. Both cars collided at their right front ends, as is clearly shown by the photographs taken after the collision.

Badzinski testified that he first observed the Friess automobile when it was about two hundred feet away; that it was approaching on his side of the road; that when he saw that a collision was imminent he turned his truck to the left to avoid a collision, but that the collision nevertheless occurred. The trial court was of the view that the testimony of Gust Beckman and Herman Friess was so contrary to the physical facts as to render it unbelievable, and therefore changed the answers of the jury which found that Badzinski was guilty of causal negligence. After a most painstaking review of the testimony in connection with the physical facts, we are of the opinion that the trial court erred in concluding

that the testimony of Beckman and Friess was incredible because contrary to the undisputed physical facts.

While testimony which is contrary to the unquestionable physical facts properly may be rejected because of its utter improbability or impossibility, *Samulski v. Menasha Paper Co.* 147 Wis. 285, 133 N. W. 142; *Holburn v. Coombs,* 209 Wis. 556, 245 N. W. 673, and other cases cited therein, such physical facts must be of such a nature as will permit of but one reasonable inference and that contrary to the testimony rejected. If the physical facts are such that different inferences may reasonably be drawn therefrom, they are then clearly not the kind of physical facts which may be considered controlling.

Aside from the physical facts, the testimony presented a clear-cut issue of fact. Each driver testified that he was on his right-hand side of the highway, that his side of the road was invaded by the other, and that in the emergency each driver turned his automobile to the left to avoid a collision. If there is any credible evidence which in any reasonable view admits of an inference that supports the jury's findings, the trial court may not change the answers. *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 228 N. W. 741; *Steubing v. L. G. Arnold, Inc.* 210 Wis. 513, 246 N. W. 554; *Stuart v. Winnie,* 217 Wis. 298, 258 N. W. 611; *Schleicker v. Krier,* 218 Wis. 376, 261 N. W. 413; *Earl v. Napp,* 218 Wis. 433, 261 N. W. 400.

Were the physical facts such as to render the testimony of Beckman and Herman Friess wholly improbable or impossible and therefore incredible? The physical facts in this case consist of the damage done to the cars, their position on the highway after the collision, the presence of glass on the north side of the black line, and the track made by the bent trailer hitch. In our view, the damage to the cars permit of either of the following inferences: (1) That at the time of the impact the Chevrolet was pointed in an

easterly direction and the Dodge truck in a southwesterly direction; (2) that the Chevrolet was pointed in a northeasterly direction and the Dodge truck was either pointed in a westerly direction or in a direction slightly to the north thereof; or (3) that the Chevrolet was pointed in a northeasterly direction and the Dodge truck in a southwesterly direction. The damage could have been caused while the cars were in either of the positions mentioned. If the Chevrolet was pointed in a northeasterly direction and the Dodge truck in a northwesterly direction at the same angles, the damages to the cars would have been quite different. However, with the Chevrolet pointed northeasterly, as testified to by both Beckman and Friess, and the Dodge truck pointed a little to the north of westerly, westerly, or southwesterly, the damages caused are consistent with either of such positions. So, in our view, there is nothing in the physical facts of the damaged cars which renders the testimony of Beckman and Friess incredible. Nor, in our view, do the positions of the cars, after they came to rest, show where the cars were just prior to the collision or how they came together at the time of the collision. The position of the Chevrolet is certainly consistent with the testimony of Beckman and Herman Friess that the Chevrolet was turned to the left in a northeasterly direction. Just how the Dodge truck reached the place where it came to rest, whether by going forward or by being knocked backward, does not appear, but in either event the testimony of Beckman and Friess, as to their position on the highway, is not thereby rendered incredible. That the broken glass was observed to be on the north side of the black line is a circumstance tending to show that the collision occurred about at the black line or somewhat to the north thereof, but broken glass from a moving car, the progress of which is suddenly impeded by a collision, has a tendency to go forward rather than to fall along a perpendicular line immediately at the point of colli-

sion. This testimony is certainly not conclusive as to the location of the cars or their movements just prior to the collision. The fact that the trailer hitch was bent at an acute angle and forced against the pavement at a point testified by one witness to be fifty-six inches south of the black line, by actual measurement, and continued in a northeasterly direction to the point where the Chevrolet and trailer came to a stop, tends strongly to support the inference that at the time of the impact the middle of the trailer was about fifty-six inches south of the black line, and tends to corroborate the testimony of Beckman and Friess that they were on the south side of the highway just before turning to the left to avoid the collision. The physical facts, in our view, are not conclusive and do not render the testimony of Beckman and Friess either wholly improbable or impossible. In our opinion, the court erred in changing the answers to questions 1 and 2 of the verdict as rendered.

The court also changed the answer of the jury to question 7 which found that Lawrence Duss did not assume the risk of the negligent manner in which Louis Badzinski was driving by acquiescing in said conduct with knowledge of the facts. In changing the answer, the court was apparently of the view that Badzinski was confronted by an emergency, not of his own creation or for which he was at all responsible, that in such situation all that he in reason was required to do was to exercise his best judgment, and that he did exercise all the skill which he possessed. The trial court reached this conclusion after holding that there was no credible evidence tending to show or permitting the inference that just prior to the collision Badzinski was on the wrong side of the road or failed, as the jury found, to drive his truck to the right of the center of the traveled portion of the roadway. In view of our conclusion that there was evidence which the jury might deem credible tending to show that Badzinski was on the wrong side of the road, either in part or wholly, he

could not take advantage of the emergency rule since he in part was responsible for the emergency which confronted him. The jury had a right to believe that Beckman turned to his left to avoid Badzinski's truck. If he did not turn his car to the left for that purpose, such act on his part is quite without explanation. There is evidence that just prior to the collision plaintiff's intestate was unable to watch the road ahead because his side of the windshield was covered with snow. This testimony came from the lips of Badzinski himself, so in our view, there is really no testimony tending to show that plaintiff's decedent assumed the risk of Badzinski's driving wholly or in part on the wrong side of the road. With the windshield on his side covered with snow he was not in a position to observe the position of the truck on the road or to warn Badzinski as to the manner of his driving. We think the evidence supports the answer of the jury to question 7.

Regardless of what our opinion may be as to the trial court's action in reducing the amount of the pecuniary damages as found by the jury, we are of the opinion that the plaintiff is not presently in a position to question it. She was afforded an opportunity to elect to take judgment for pecuniary damages amounting to $4,000. That she elected so to do, although the election filed was, to say the least, equivocal and conditional. See notice of election recited in statement of facts. She could not elect to remit damages for her financial loss in excess of $4,000 and at the same time preserve the right to assert that the option granted her was error. Having elected to remit all pecuniary damages in excess of $4,000, she is, in our opinion, bound thereby.

The defendants, Albert Friess, Herman Friess, and Gust Beckman, pursuant to the provisions of sec. 274.12, Stats., moved for a review of certain rulings of the trial court. The rulings complained of were, (1) the changing of the answers to questions 1, 2, and 7; and (2) in refusing to change the

answers to question 5, which found that at the time of the collision Beckman was driving the automobile as the servant of (a) Albert Friess and (b) Herman Friess, and within the scope of his employment. Whether the rulings as to the causal negligence of Badzinski and the assumption of the risk by plaintiff's intestate could be questioned by a motion to review, rather than by an appeal, need not be determined, for the reason that those questions have been determined on plaintiff's appeal. This leaves only for consideration the question whether the court erred in sustaining the answers of the jury to question 5, which found that Beckman was the servant of both Albert Friess and Herman Friess. The trial court was of the opinion, after carefully reviewing all of the evidence and adverting to the appearance of both Herman Friess and Albert Friess upon the witness stand and their manner of testifying, that the answers of the jury were supported by the evidence. In our opinion, the conclusions of the trial court may not be disturbed.

*By the Court.*—Judgment reversed, and cause remanded with directions to reinstate the answers of the jury to questions 1, 2, and 7, and to enter judgment on the verdict as rendered in favor of the plaintiff and against the defendants Albert Friess, Herman Friess, Gust Beckman, Louis Badzinski, and Farmers Mutual Automobile Insurance Company, as limited by the terms of its policy issued to Louis Badzinski.

A motion for a rehearing was denied, with $25 costs, on September 14, 1937.