[Civ. No. 45482. First Dist., Div. Four. July 23, 1979.]

ANNE LOUISE LANTIS, Plaintiff and Appellant, v.
MICHAEL GILBERT CONDON et al., Defendants and Respondents.

---

## Counsel

Wyckoff, Parker, Boyle & Pope, Wyckoff, Richardson, Sanson, Allen & Locke-Paddon, Bruce A. Richardson and Charles E. Finney for Plaintiff and Appellant.

Richard B. Barrett and James D. Biernat for Defendants and Respondents.

---

## Opinion

POCHÉ, J.—This is a loss of consortium case where the trial judge reduced plaintiff's recovery by the proportion of negligence attributable to her spouse. ██ We hold that to be error because: (1) contributory negligence may not be imputed merely on the basis of a marital relationship, and (2) loss of consortium is not a derivative cause of action.

Anne is the wife of Mack Leroy Lantis. Mack was seriously injured in a collision between two trucks, one of which was driven by him. Mack brought suit against respondents, the owners and operators of the other truck, to recover damages sustained as a result of the accident. Anne joined as a plaintiff upon a cause of action for loss of her husband's consortium. The jury found that the respondents were negligent but also that Mack was 80 percent contributorily negligent. The jury awarded Anne $15,000 for loss of consortium. Based solely upon Mack's contributory negligence, the trial judge reduced Anne's verdict 80 percent to $3,000. From that judgment Anne appeals.

A spousal cause of action for loss of consortium was first recognized by the California Supreme Court in *Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669]. Shortly thereafter, the high court's decision in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] abolished the doctrine of contributory negligence as an absolute bar to recovery and replaced it with a system of comparative negligence based upon liability for damage

in proportion to fault. (*Id.*, at p. 829.) The trial bench and bar were left without guidance as to whether the contributory negligence of one spouse was to be recognized as a defense to the other's cause of action for loss of consortium. We now examine the only two theories which could support reduction of Anne's recovery, noting at the outset that each evolved during the days when contributory negligence was an all or nothing defense. That is important because the present status of each theory is clouded with language of that peculiar history.

1. *Imputation of contributory negligence.*

At common law, husband and wife were considered to be one legal entity. Each spouse's negligence was chargeable against the other, so that the concurrent contributory negligence of one spouse totally barred the other from any recovery for his or her separate injuries. (See Prosser on Torts (4th ed.) pp. 489-490.) Things changed in this state when, in 1968, the Legislature abolished the defense of imputed contributory negligence. (Stats. 1968, ch. 457, § 6; see Reppy, *The Effect of the Adoption of Comparative Negligence on California Community Property Law: Has Imputed Negligence Been Revived?* (1977) 28 Hastings L.J. 1359, 1373.) Civil Code section 5112 now provides: "If a married person is injured by the negligent or wrongful act or omission of a person other than his spouse, *the fact that the negligent or wrongful act or omission of the spouse of the injured person was a concurring cause of the injury is not a defense* in any action brought by the injured person to recover damages for such injury except in cases where such concurring negligent or wrongful act or omission would be a defense if the marriage did not exist." (Italics added.) California cases soon thereafter established that the marital relationship itself did not furnish grounds for imputing the negligence of one spouse to the other. (See e.g., *Hooper* v. *Romero* (1968) 262 Cal.App.2d 574 [68 Cal.Rptr. 749]; *Workman* v. *City of San Diego* (1968) 267 Cal.App.2d 36 [72 Cal.Rptr. 509].)

Respondents contend that Civil Code section 5112 does not fit into the world of comparative negligence. They point especially to the language that a spouse's concurring negligence shall not be a "defense" in an action brought by the other spouse for injuries. It is true that, read literally, the statute prevents imputation of negligence only in situations where it would be an absolute barrier to recovery. Respondents suggest that imputation would still operate where such negligence merely reduces damages. (See Reppy, *op. cit. supra,* at pp. 1361, 1367.)

■ We reject that interpretation. The object of the legislation was to abolish the antiquated notion of imputed contributory negligence and to bring this area of the law back into harmony with the basic principle contained in Civil Code section 1714 that "[e]very one is responsible . . . for an injury occasioned to another by his want of ordinary care . . . *except so far as the latter has,* . . . by want of ordinary care, *brought the injury upon himself.*" (Italics added.) Civil Code section 5112 was intended to eliminate *all* vestiges of imputed contributory negligence. We can find no reason to believe that the Legislature intended this "threadbare fiction" as a partial, rather than a total, bar to the innocent spouse's recovery. (See Prosser, *op. cit. supra,* p. 892.)

Since both our courts and our Legislature have discarded the doctrine of interspousal imputed negligence, there is no basis for a reduction in Anne's damage award upon the theory that Mack's contributory negligence must be imputed to her.

2. *"Derivative" character of the cause of action.*

■ A more compelling rationale for reducing Anne's damage award, and the one upon which the trial court apparently relied, was that a wife's cause of action for loss of consortium is wholly "derivative" in nature, and is therefore subject to all of the defenses which could be asserted against her husband. This conclusion has been reached in two comparative negligence states, Arkansas (*Nelson* v. *Busby* (1969) 246 Ark. 247 [437 S.W.2d 799, 803]) and Wisconsin (*White* v. *Lunder* (1975) 66 Wis.2d 563 [225 N.W.2d 442, 449]), and has also been accepted by the Committee on Standard Jury Instructions (BAJI No. 14.40). On the other hand, this "derivative" theory received a poor law review press (see, for example, Prosser, *op. cit. supra,* pp. 892-893) and has been flatly rejected by the First Circuit Court of Appeals in applying New Hampshire's comparative negligence law. (*Macon* v. *Seaward Const. Co., Inc.* (1st Cir. 1977) 555 F.2d 1.)

The basis for the theory appears to be that the wife's cause of action is so inextricably linked to the marital relation that there is in reality only one legally cognizable injury. Another way of explaining the legal metaphysics of this is to picture the cause of action as being in the nature of an assignment from the injured spouse to his partner. A particularly colorful example of the language used to describe this is found in the early case of *Stuart* v. *Winnie* (1935) 217 Wis. 298 [258 N.W. 611], decided shortly after Wisconsin's adoption of comparative negligence law: ". . .

Because of that marital relation and those resulting obligations and rights, that part of her cause of action which is for recovery on account of those items is deemed, by operation of law, to be assigned to the husband, but in thus deriving that part of her cause of action from her, it continues in him subject to all such defenses as existed against her in whom the cause of action would otherwise have vested in its entirety. The part so assigned can have no better standing in court than the part not assigned. Neither the whole nor a part of the cause of action can be purged by merely a legal transfer or assignment from contributory negligence whenever that exists. That result is not based on the theory of imputed negligence, but is in accord with the familiar principle of law that the assignee of a cause of action stands in the shoes of the assignor." (258 N.W. at p. 614.) We find this description neither persuasive nor logical. Although the wife's cause of action "arises" from the bodily injury to her husband (*United Services Automobile Assn.* v. *Warner* (1976) 64 Cal.App.3d 957, 964 [135 Cal.Rptr. 34]), the injury suffered is personal to the wife (*Rodriguez* v. *Bethlehem Steel Corp., supra,* 12 Cal.3d 382, 405). Loss of her husband's consortium impairs a wife's interests which are wholly separate and distinct from that of her husband: " '. . . the wife's loss is just as real as it is distinct. She can no longer enjoy *her* legally sanctioned and morally proper privilege of copulation or procreation, and is otherwise deprived of *her* full enjoyment of her marital state. These are *her* rights, not his.' " (*Rodriguez, supra,* 12 Cal.3d at p. 405, quoting from *Yonner* v. *Adams* (1961) 53 Del. 229 [167 A.2d 717, 728], italics original.) Thus, the injury incurred can neither be said to have been "parasitic" upon the husband's cause of action nor can it be properly characterized as an injury to the marital unit as a whole. ■ Rather, it is comprised of Anne's own physical, psychological and emotional pain and anguish which results when her husband is negligently injured to the extent that he is no longer capable of providing the love, affection, companionship, comfort or sexual relations concomitant with a normal married life. (See *Rodriguez, supra,* 12 Cal.3d at p. 400, quoting from *Clouston* v. *Remlinger Oldsmobile Cadillac, Inc.* (1970) 22 Ohio St.2d 65 [51 Ohio Ops.2d 96, 258 N.E.2d 230, 235].) From the vantage point of the negligent defendant, Anne is simply a foreseeable plaintiff to whom he owes a separate duty of care. (See *Rodriguez, supra,* at pp. 399-400.) If the injury she suffered were a broken leg while riding in a vehicle driven by her contributorily negligent husband, there would be no question but that his contributory negligence would not destroy or mitigate her right to full recovery. (*Wilkins* v. *Sawyer* (1965) 232 Cal.App.2d 458, 462 [42 Cal.Rptr. 817].) There is no reason why injury to her psychological and emotional state should be treated any differently than injury to her physical well being. (Cf. *Macon*

v. *Seaward Const. Co., Inc., supra,* 555 F.2d 1, 2.) The law protects equally her sex life and her leg.

Respondent's most telling argument is to analogize a wife's claim of loss of consortium to an action by heirs for the wrongful death of their decedent, pointing out that although the cause of action is independent, California law still recognizes a decedent's contributory negligence as a valid defense to the claim of the heirs. (*Buckley* v. *Chadwick* (1955) 45 Cal.2d 183, 201 [288 P.2d 12, 289 P.2d 242].) This rule, however, is at best an anomaly and an anachronism resulting from the unique historical circumstances surrounding the development of a cause of action which was created entirely by statute. When first enacted in 1862, the statute was carefully worded to give the decedent's personal representative a cause of action where the defendant's wrongful act or neglect "would (if death had not ensued) have *entitled the party injured to maintain an action and recover damages* in respect thereof . . . ." (Stats. 1862, p. 447; *Buckley* v. *Chadwick, supra,* 45 Cal.2d at p. 191, italics added.) Although contributory negligence was not mentioned in the statute, the quoted language was interpreted by California courts to permit the decedent's contributory negligence to be asserted as a defense in an action for wrongful death. This interpretation continued even after the quoted language was deleted from the statute so that the cause of action could be brought by the decedent's heirs for their own separate and distinct damages. (See *Buckley, supra,* 45 Cal.2d at pp. 193-199.) Squarely confronted with the issue in 1955, the California Supreme Court held that since the Legislature was presumed to have been aware of judicial decisions recognizing the contributory negligence defense and since it had made no attempt to abolish it in later amendments of the statute, the rule should continue until the Legislature saw fit to alter it. (*Buckley, supra,* at pp. 200-201.) The life expectancy of the *Buckley* decision today is questionable. Justice Mosk has recently indicated that it should be overruled in his strongly worded concurring opinion in *Willis* v. *Gordon* (1978) 20 Cal.3d 629, 636-638 [143 Cal. 723, 574 P.2d 794].

As the Supreme Court itself has pointed out, the cause of action for loss of consortium does not resemble wrongful death because it has no statutory foundation but is entirely of judicial origin. (*Justus* v. *Atchison* (1977) 19 Cal.3d 564, 572 [139 Cal.Rptr. 97, 565 P.2d 122].) Because of that, we must look to the existing case authority to determine whether Anne's right to recovery was meant to be derivative of or independent from her husband's cause of action for bodily injuries.

We have mentioned that the *Rodriguez* decision described loss of consortium as an invasion of separate and distinct protectible interests of a husband or wife. (12 Cal.3d at p. 405.) The Supreme Court has also indicated that it would reject the "derivative" theory by choosing the rule of permissive rather than mandatory joinder of the wife's action for loss of consortium with her husband's action for negligence. (*Id.,* at pp. 406-407.) If the husband's contributory negligence were an indispensable element to a proper determination of the wife's claim, it is reasonable to assume that joinder would have been made mandatory. (See 2 Harper & James, Law of Torts (1956) p. 1270, fn. 6.)

Additionally, in *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, 822, the Supreme Court summarized two fundamental precepts which are embodied in Civil Code section 1714: "The first is that one whose negligence has caused damage to another should be liable therefor. The second is that one whose negligence has contributed to his own injury should not be permitted to cast the burden of liability upon another." To hold that Anne's damages for loss of consortium must be proportionately reduced by the amount of contributory negligence attributable to her husband would violate these principles. It would allow one whose negligence has caused another injury to partially escape liability because of the conduct of a third party. It would also force a plaintiff, who was herself free from fault, to pay a penalty for the negligence of another. Reduced to its bare essentials, the only real effect of holding that Anne's action is "derivative" would be to resurrect under a different name the doctrine of imputed negligence—a doctrine which has been thoroughly discredited by modern courts, by the Legislature in Civil Code section 5112, and by legal scholars.

Respondents argue, however, that a reversal of the trial court's modification would have the effect of rewarding Mack for his own negligence since Anne's award for loss of consortium would be community property. Perhaps the proper solution will be a reclassification of damages for this type of injury as separate property. (See Reppy, *op. cit. supra,* 28 Hastings L.J. at pp. 1380-1383.) The problem has been partially solved by allowing a defendant to cross-complain against the contributory negligent spouse for indemnity (*American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 591 [146 Cal.Rptr. 182, 578 P.2d 899]) and by requiring that this liability be discharged from that spouse's separate property before community property can be reached. (Civ. Code, § 5113, subd. (a).)

■ In any event, when the Legislature abolished the defense of imputed contributory negligence while reinstating the rule that the nonnegligent spouse's damages were still community property (7 Witkin, Summary of Cal. Law (8th ed. 1974) Community Property, § 18, p. 5110), it reversed the presumption that permitting a contributorily negligent spouse to indirectly profit from his or her own wrong was a worse evil than allowing a negligent defendant to escape liability for injuries to a plaintiff who was totally free from fault. (See *Flores* v. *Brown* (1952) 39 Cal.2d 622, 630-632 [248 P.2d 922].) That legislative judgment remains as binding under comparative negligence as it was under the previous all or nothing doctrine of contributory negligence. Until the Legislature declares otherwise, we defer to it.

The portion of the judgment awarding appellant $3,000 is reversed, with directions to enter judgment for her in the amount of $15,000.

Caldecott, P. J., and Rattigan, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied November 2, 1979. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.