[Civ. No. 31154. Fourth Dist., Div. One. Apr. 17, 1985.]

JEANNE CLAIRE B. ABELLON, Plaintiff and Appellant, v.
HARTFORD INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

James A. McIntyre, Virginia R. Gilson, Marc O. Stern and McInnis, Fitzgerald, Rees, Sharkey & McIntyre for Plaintiff and Appellant.

Morris, Polich & Purdy, Michael M. Edwards and Richard R. Sooy for Defendant and Respondent.

OPINION

**STANIFORTH, J.**—Jeanne Claire B. Abellon (Jeanne) appeals a partial summary judgment in favor of Hartford Insurance Company (Hartford),

declaring that under a policy issued by Hartford the total policy limit applicable to the claims of Jeanne and her husband Carlos is the "per person" limit of $250,000.

The fundamental issue posed in this appeal is whether a spouse's claim for loss of consortium is subject to a "per person" liability limitation or a "per occurrence" limitation under a general liability insurance policy.

## FACTS

On February 19, 1980, a driver of a tractor-trailer owned by Ron's Delivery Service collided with Carlos' car. As a result of the accident, Carlos lost sight in one eye and suffered severe brain damage. Jeanne suffered the loss of her husband's consortium.

Ron's Delivery Service was insured under a truck liability policy issued by Hartford. Carlos brought suit against Ron's Delivery Service for the personal injuries he sustained. Jeanne sought damages for loss of services and loss of consortium. A stipulated judgment between the Abellons and Ron's Delivery Service was entered in favor of Carlos in the amount of $750,000 and in favor of Jeanne in the amount of $250,000.

Hartford paid the $250,000 policy limits on Carlos' claim but refused to pay Jeanne's $250,000 claim on two grounds: (1) as a matter of law Hartford's liability under the terms of the insurance policy was limited to $250,000, which had already been paid; and (2) the stipulated judgment in favor of Jeanne was not binding upon Hartford. Hartford moved for summary judgment in this matter and the lower court granted partial summary judgment on the first issue submitted. The court dismissed the action and Jeanne appeals.

## DISCUSSION

### I

The trial court's findings of fact are undisputed, including the finding Jeanne suffered a loss of consortium as a consequence of the serious injuries her husband Carlos sustained. The sole question before this court is whether Jeanne's injury is an injury subject to the "per person" limitation or the "per occurrence" limitation of the policy.

The relevant policy language provides: "1. The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit of Bodily Injury Liability shown in this endorsement

for 'each person.' 2. Subject to the limit for 'each person,' the most we will pay for all damages resulting from bodily injury caused by any one accident is the limit of Bodily Injury Liability shown in this endorsement for 'each accident.'" The policy limits for bodily injury are $250,000 for each person and $500,000 for each occurrence.

Jeanne contends her claim for loss of consortium is a separate bodily injury caused by the accident which is subject to the $500,000 "per occurrence" limit. On the other hand, Hartford asserts Jeanne's claim is governed by the same "per person" limit applicable to her husband. Hartford claims that upon Carlos' receipt of the $250,000 "per person" policy limit, all claims were exhausted and the insurance company was under no obligation to pay Jeanne's claim.

## II

Hartford urges Jeanne's loss of consortium is derived from the injuries Carlos sustained and her consequential damages are therefore subject to the "per person" limitation. Hartford's contention has been negated by the California Supreme Court in *Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669]. There the court acknowledged loss of companionship, emotional support, love, felicity and sexual relations as real and direct injuries to the claimant. (*Id.,* at p. 400.) The court stressed the personal and direct injury inflicted upon a wife suffering loss of her husband's consortium, stating: " 'There certainly is no doubt today that the wife of a husband who has been incapacitated suffers great pain and endures constant anguish, particularly if she is denied the opportunity to have children. . . . When a person is injured either intentionally or negligently, to the extent that such person can no longer be a companion and is no longer capable of giving love, affection, society, comfort and sexual relations to his or her spouse, that spouse has suffered a direct and real personal loss.' " (*Ibid.*)

Conforming to the holding in *Rodriguez,* in *Lantis* v. *Condon* (1979) 95 Cal.App.3d 152, 157 [157 Cal.Rptr. 22] (hg. den.), the appeal court stated: "Although the wife's cause of action 'arises' from bodily injury to her husband [citation], the injury suffered is personal to the wife [citation]." The court concluded an *injury* to one's psychological and emotional state should be treated no differently than an injury to one's physical well-being. (*Id.,* at p. 157.)

"Loss of her husband's consortium impairs a wife's interests which are wholly separate and distinct from that of her husband: ' ". . . the wife's loss is just as real as it is distinct. She can no longer enjoy *her* legally

sanctioned and morally proper privilege of copulation or procreation, and is otherwise deprived of *her* full enjoyment of her marital state. These are *her* rights, not his."' (*Rodriguez, supra,* 12 Cal.3d at p. 405, quoting from *Yonner* v. *Adams* (1961) 53 Del. 229 [167 A.2d 717, 728], italics original.) Thus, the injury incurred can neither be said to have been 'parasitic' upon the husband's cause of action nor can it be properly characterized as an injury to the marital unit as a whole. *Rather, it is comprised of Anne's own physical, psychological and emotional pain and anguish which results when her husband is negligently injured to the extent that he is no longer capable of providing the love, affection, companionship, comfort or sexual relations concomitant with a normal married life.* (See *Rodriguez, supra,* 12 Cal.3d at p. 400, quoting from *Clouston* v. *Remlinger Oldsmobile Cadillac, Inc.* (1970) 22 Ohio St.2d 65 [51 Ohio Ops.2d 96, 258 N.E.2d 230, 235].) From the vantage point of the negligent defendant, Anne is simply a foreseeable plaintiff to whom he owes a separate duty of care. (See *Rodriguez, supra,* at pp. 399-400.) *If the injury she suffered were a broken leg while riding in a vehicle driven by her contributorily negligent husband, there would be no question but that his contributory negligence would not destroy or mitigate her right to full recovery.* (*Wilkins* v. *Sawyer* (1965) 232 Cal.App.2d 458, 462 . . . .) *There is no reason why injury to her psychological and emotional state should be treated any differently than injury to her physical well being.* (Cf. *Macon* v. *Seaward Const. Co., Inc., supra,* 555 F.2d 1, 2.) The law protects equally her sex life and her leg." (*Lantis* v. *Condon, supra,* 95 Cal.App.3d 152, 157-158, italics added.)

 Authorizing coverage and recovery by more than one injured person is, patently, the prime reason the "per occurrence" paragraph is placed in the policy. To merge Jeanne's injury with that of her husband under the "per person" limitation would not "achieve coverage for the losses to which the policy relates." (*Employers Cas. Ins. Co.* v. *Foust* (1972) 29 Cal.App.3d 382, 386 [105 Cal.Rptr. 505].) Such an interpretation would defeat the public policy of this state as expressed by the Supreme Court in *Rodriguez.* Loss of consortium is a distinct and individual injury. By merging Jeanne's injury with that of her husband, her injury, in effect, becomes derivative and noncompensable under the terms of the insurance contract, thus effectively negating public policy.

The reasoning of *Rodriguez* and *Lantis* supports the inevitable conclusion Jeanne has suffered an independent, nonparasitic personal injury as a result of an automobile accident negligently caused by Hartford's insured. She is a second person injured by the accident.

### III

Did Jeanne sustain a "bodily injury?" In the final analysis, this is a question of fact. It involves a medical or psychological problem of proof rather

than purely a question of law. In *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 929 [167 Cal.Rptr. 831, 616 P.2d 813], the Supreme Court reasoned: "In our view the attempted distinction between physical and psychological injury merely clouds the issue. The essential question is one of proof; whether the plaintiff has suffered a serious and compensable injury should not turn on this artificial and often arbitrary classification scheme."

But because of a definitional morass surrounding the use of the words "physical" and "mental," it is often difficult to accurately predict what types of injuries will be considered worthy of compensation. "Even doctors have a difficult time distinguishing between 'mental' and 'physical,' because every emotional disturbance has a physical aspect and every physical disturbance has an emotional aspect. [Citation.]" (Comment, *Negligently Inflicted Mental Distress: The Case For An Independent Tort* (1971) 59 Geo. L.J. 1237, 1241, fn. 24.)[1] ▄▄▄ Modern California case law addressing this issue as a legal proposition has determined (1) bodily injury can and does result from emotional distress and (2) the injury so sustained may be compensable.

In *Employers Cas. Ins. Co.* v. *Foust, supra,* 29 Cal.App.3d 382, 385, the court held: "The sole question before us involves the proper compass of the term 'bodily injury' in appellant's policy. Specifically, *the question*

---

[1]Perceptive analysis of this problem is found in Comment, *Negligently Inflicted Mental Distress: The Case for an Independent Tort, supra,* pages 1248-1250, where it is stated: "From a medical perspective, mental distress resulting from a negligent act can be characterized as a reaction to a traumatic stimulus which . . . can be either physical or purely psychic. [T]raumatic stimulus causes two types of mental reactions—an immediate, automatic response designed to protect the individual from harm or unpleasantness, and a secondary, longer-lasting action caused by the individual's inability to cope with the traumatic event. The primary response constitutes the individual's attempt to combat the stress engendered by defendant's negligent act, and is exemplified by such emotional responses as fear, anger, grief, shock, humiliation, or embarrassment. These reactions occur automatically and instinctively, as, for example, when the individual is put in great personal danger or is forced to witness the painful death of a loved one. In all instances this initial mental reaction is subjective in nature and of relatively short duration, although its precise form and seriousness will vary according to the individual and the particular traumatic stimulus.

"Secondary reactions, which may be termed traumatic neuroses, are sequelae of the primary responses and are caused by an individual's continued inability to adequately adjust to a traumatic event. Medical science has identified three types of neuroses which frequently result from traumatic occurrences. In the anxiety reaction, the trauma produces severe tension, resulting in such physiological and psychological symptoms as nervousness, nausea, weight loss, pains in the stomach, genito-urinary distress, emotional fatigue, weakness, headaches, and backaches. These symptoms are real and identifiable and can be extremely disabling; as long as the tension remains, the individual will suffer various symptoms such as fear and apprehension, a sense of impending doom, irritability or indecision. A second common neurosis is the conversion reaction, a response to trauma whereby the individual converts consciously disowned wishes or impulses into a variety of physiological symptoms, such as paralysis, loss of hearing or sight, pain, or muscular spasms." (Fns. omitted.)

*is whether bodily injury resulting from emotional distress is recoverable under the policy when the person sustaining such injury in the accident was in no way externally touched by the vehicle nor placed in fear of his life. If, as we hereafter conclude, the answer is in the affirmative,* then the entire limit of the policy ($50,000) is available to satisfy any judgment the respondents, or either of them, may eventually recover.

"Appellant's insurance policy outlines the insurer's obligations, in pertinent part, as follows: ' "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: A. Bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by any person; B. . . .; arising out of the ownership, maintenance or use of the owned automobile. . . ." ' (*Id.*, at p. 385.)

"[T]his court finds the term 'bodily injury' in appellant's policy covers bodily or physical injury even where such injury is proximately caused, not by direct collision, but by emotional distress induced directly or indirectly by such collision." (*Id.*, at p. 387.)

In *Vanoni* v. *Western Airlines* (1967) 247 Cal.App.2d 793, 796 [56 Cal.Rptr. 115], quoting *Sloane* v. *Southern Cal. Ry. Co.* (1896) 111 Cal. 668, 680 [44 P. 320], discussed a similar question, stating: " '. . . The interdependence of the mind and body is in many respects so close that it is impossible to distinguish their respective influence upon each other. . . . It is a matter of general knowledge that an attack of sudden fright or an exposure to imminent peril has produced in individuals a complete change in their nervous system, and rendered one who was physically strong and vigorous weak and timid. . . . Whatever may be the influence by which the nervous system is affected, its action under that influence is entirely distinct from the mental process which is set in motion by the brain. The nerve and nerve centers of the body are a part of the physical system, and are not only susceptible of lesion from external causes, but are also liable to be weakened and destroyed from causes primarily acting upon the mind. *If these nerves or the entire nervous system is thus affected, there is a physical injury thereby produced,* and, if the primal cause of this injury is tortious, it is immaterial whether it is direct, as by a blow, or indirect through some action upon the mind.' " (Italics added.)

*Alcorn* v. *Anbro Engineering Inc.* (1970) 2 Cal.3d 493, 498 [86 Cal.Rptr. 88, 468 P.2d 216], similarly recognized the interdependence of the mind and body: "The physical consequences of shock or other disturbance of the

nervous system are sufficient to satisfy the requirement that plaintiff has suffered a physical injury from defendant's conduct."

The language from *Vanoni* cited above is also quoted with approval in *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, 921.

In this most recent and controlling authority, the Supreme Court declared: "The [trial] court . . . erred in sustaining the demurrer to the cause of action for loss of consortium. Both parties focus, appropriately, on our decision in *Rodriguez* v. *Bethlehem Steel Corp., supra,* 12 Cal.3d 382, in which this cause of action had its genesis in California. After rejecting a number of arguments against such recovery, we held that 'each spouse has a cause of action for loss of consortium, as defined herein, caused by a negligent or intentional injury to the other spouse by a third party.' (*Id.,* at p. 408.)" (*Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, 931.) The court observed: "We are aware of the allegation herein that Mrs. Molien suffered 'injury to her body and shock and injury to her nervous system.' Thus defendants contend that neither trivial physical injury nor emotional injury is adequate to support a cause of action for loss of consortium. But since we have concluded . . . that the distinction between physical injury and emotional distress is no longer defensible, we do not uphold the present cause of action solely on the ground that *some* physical injury was alleged." (*Id.,* at p. 931, fn. 2.) The Supreme Court then explained: "The issue in *Rodriguez* was whether to recognize the cause of action for loss of consortium at all (*id.* at p. 385), and our holding spoke only of recovery for 'a negligent or intentional injury' to the plaintiff's spouse (*id.* at p. 408). We had no reason to delimit the kinds of 'injury' that would support the cause of action, nor did we endeavor to do so. Certainly the facts presented a compelling justification for permitting Mrs. Rodriguez to recover: her loss was 'palpable and extreme.' (Note, *Right to Recover for Loss of Consortium* (1975) 63 Cal.L.Rev. 323.) But the fact that it was caused by a devastating physical injury to her husband was not vital to our decision." (*Id.,* at p. 932.) In conclusion, the court wrote: "Finally, defendants present no persuasive reasons to justify their proposal to limit recovery for loss of consortium to cases in which the plaintiff's spouse suffers severe physical injury. Indeed, we perceive compelling grounds for not drawing this line. It is true our opinion in *Rodriguez* contemplates injury to the nonplaintiff spouse that is sufficiently serious and disabling to raise the inference that the conjugal relationship is more than superficially or temporarily impaired. As we earlier explained, however, it is irrefutable that certain psychological injuries can be no less severe and debilitating than physical injuries. We could accept defendants' position only by rejecting the manifest truth that a marital relationship can be grievously injured when one spouse suffers a traumatically induced neurosis, psychosis, chronic depression, or phobia.

■ "Whether the degree of harm suffered by the plaintiff's spouse is sufficiently severe to give rise to a cause of action for loss of consortium is a matter of proof. When the injury is emotional rather than physical, the plaintiff may have a more difficult task in proving negligence, causation, and the requisite degree of harm; but these are questions for the jury, as in all litigation for loss of consortium." (*Id.*, at pp. 932-933.)

For all of these reasons, it must follow Jeanne is not foreclosed from recovering either under the "per occurrence" provision of the insurance policy issued by Hartford or the law governing recovery for loss of consortium.

## IV

■ Hartford attempts to rebut the foregoing, almost self-evident conclusions pointing to case authority which categorizes loss of consortium as damage subject to the "per person" limitation. The difficulty with Hartford's position is that defining language extends or limits coverage to varying degrees depending upon the particular language chosen by the insurer.

The principal case relied upon by the trial court in denying Jeanne's recovery under the "per occurrence" clause was *United Services Automobile Assn.* v. *Warner* (1976) 64 Cal.App.3d 957 [135 Cal.Rptr. 34]. In *Warner,* a husband brought an action for loss of consortium after his wife became permanently paralyzed as a result of an automobile accident. The sole issue before the court was whether the "per person" or the "per occurrence" limitation provision of the insurance policy was applicable. There, the limitation of liability provision stated: " 'The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, *including damages for and loss of services,* arising out of bodily injury sustained by one person as the result of any one occurrence; the limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of the company's liability for all such damages arising out of the bodily injury sustained by two or more persons as the result of any one occurrence.' " (*United Services Automobile Assn.* v. *Warner, supra,* 64 Cal.App.3d 957, 961; italics added.) The "per person" limitation defined "all damages" as including damages for care and loss of services. Consequently, the court found the language of the policy clear and unambiguous. (*Id.*, at p. 962.)

*Warner* and the related cases Hartford cites[2] are unpersuasive and not controlling here because they contain policy language which is dramatically

[2]*State Farm Mutual Auto. Ins. Co.* v. *Ball* (1981) 127 Cal.App.3d 568, 571-572 [179 Cal.Rptr. 644]; *Perkins* v. *Fireman's Fund Indem. Co.* (1941) 44 Cal.App.2d 427, 431 [112 P.2d 670].

different from the language in Hartford's policy. *The Warner "per person" limitation specifically defines "all damages" as including loss of "services"; Hartford's "per person" limitation contains no such qualifying phrase.* Hence, Ron's Delivery Service was given no notice when it purchased the policy that loss of consortium damages fell within the purview of the "per person" limitation.

V

■ In interpreting Hartford's policy, we apply the general principle that doubts as to the meaning of language in an insurance policy must be resolved against the insurer and that any exception to the performance of the basic underlying obligation must be so clearly stated as to apprise the insured of its effect. (*Continental Cas. Co.* v. *Phoenix Constr. Co.,* (1956) 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914].) The provisions of the policy as a whole as well as the exceptions to the liability of the insurer must be construed so as to give the insured the protection which he reasonably had a right to expect. (*Id.,* at p. 438.) Hence, we must evaluate not only Hartford's contract form, but also Hartford's insured's knowledge, understanding and normal expectation of the extent of coverage of the policy.

In view of the disparate bargaining status of the parties herein we must ascertain the meaning of the limitation which the insured would reasonably expect, thus, protecting the weaker party's expectation at the expense of the stronger party's expectation. (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 879 [27 Cal.Rptr. 172, 377 P.2d 284].) As the California Supreme Court cautioned: "'. . . It is a matter almost of common knowledge that a very small percentage of policy-holders are actually cognizant of the provisions of their policies and many of them are ignorant of the names of companies issuing the said policies. The policies are prepared by the experts of the companies, they are highly technical in their phraseology, they are complicated and voluminous . . . and in their numerous conditions and stipulations furnishing what sometimes may be veritable traps for the unwary.' [Citation.]" (*Ibid.*) Therefore, this court reads Hartford's policy as a layman would read it and not as it might be analyzed by one of Hartford's insurance experts.

■ In so reading, we find nothing in the contract insurance policy which would apprise Ron's Delivery Service that in the event of an accident a second person's loss of consortium claim would fall within the "per person" limitation. The "per person" limitation merely limits the amount of damages recoverable by each person injured in "any one accident." To assume that Ron's Delivery Service, or any reasonable consumer, would

understand the "per person" limitation would not include loss of consortium damages, is to rest upon hypothesis, not fact. Hartford's limitation of liability provision is typical of those provisions characterized as "traps for the unwary." (See *Steven* v. *Fidelity & Casualty Co., supra,* 58 Cal.2d 862, 879.) It is elementary insurance law that limitations in an insurance policy must be conspicuous, plain and clear. (*Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 751 [161 Cal.Rptr. 322].) We are unwilling to effectuate a limitation which is unclear, unexpected and inconspicuous. Since we are required to resolve uncertainties in favor of the insured and to interpret the policy provisions according to the layman's reasonable expectations, we conclude that Jeanne's loss of consortium damages are not subject to the "per person" limitation.

Turning to the "per occurrence" limitation of the policy, we find that it too does not specifically include or exclude damages for loss of consortium. This limitation provides "subject to the limit for 'each person,' the most [Hartford] will pay for all damages resulting from *bodily injury caused by any one accident*" is $500,000. The limitation clearly limits Carlos' recovery to the $250,000 amount he received under the "per person" limitation. However, coverage for Jeanne's damages can be found under at least two interpretations of the "per occurrence" language.

This provision affirmatively extends coverage to "all damages resulting from *bodily injury* caused by any one accident." Since the provision does not specifically state that damages must result from bodily injury to one physically present at the time of the accident, one can reasonably conclude coverage extends to all persons damaged as a result of bodily injuries sustained in the accident. Thus, under settled rules of construction applicable to insurance policies, this court must, where semantically possible, construe the policy so as to achieve *its manifest objective of indemnifying the insured against the type of losses to which the policy relates.* (*Stewart* v. *Estate of Bohnert* (1980) 101 Cal.App.3d 978 [162 Cal.Rptr. 126].)

While Hartford may have intended to limit coverage to those physically present at the time of the accident, we find no such restriction in the limitation. Hence, this court adheres to the long standing principle we stressed in *Government Employees Ins. Co.* v. *Kinyon* (1981) 119 Cal.App.3d 213 [173 Cal.Rptr. 805]: ██ "[W]here the meaning of a policy provision is doubtful and the language thereof is fairly susceptible of different constructions, the courts must adopt the construction least favorable to the insurer and most favorable to the insured. Policy provisions designed to cut down, restrict or limit insurance already granted or introductory exceptions or exemptions must be strictly construed against the insurer." (*Id.,* at p. 226.)

In construing Hartford's policy in the light most favorable to Ron's Delivery Service, its insured, we conclude when the insurance policy is read as a whole it covers Jeanne's loss of consortium damages. Specifically, we find Jeanne's independent injury covered by the "per occurrence" limitation. In addition, the injury Jeanne has sustained is separate from that of her husband. Therefore, the language of the "per person" limitation cannot be strained so as to merge Jeanne's injury with her husband's. If Hartford wants to limit liability in accidents where loss of consortium damages are sought, it should expressly provide that such damages are subject to the "per person" limitation.

Sanctioning such a construction, however, would defeat the very purpose of the additional "per occurrence" limitation which applies when more than one person is injured in an accident. Thus, we conclude Hartford is obligated to indemnify Jeanne for loss of consortium subject to the "per occurrence" limitation.

The judgment is reversed and the cause is remanded for entry of judgment in favor of Jeanne in the amount of $250,000 to be paid by Hartford.

Brown (Gerald), P. J., concurred.

**LEWIS, J.**—I respectfully dissent.

Ron's Delivery Service bought a policy from Hartford Insurance Company which provided, in part:

"Bodily Injury Liability:

$250,000. Each Person

$500,000. Each Accident

". . . . . . . . . . . . . . . . . . . . .

"Our Limit of Liability is changed to read:

"A. Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, our limit of liability is as follows:

"1. The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit of Bodily Injury Liability shown in this endorsement for 'each person'.

"2. Subject to the limit for 'each person', the most we will pay for all damages resulting from bodily injury caused by any one accident is the limit of Bodily Injury Liability shown in this endorsement for 'each accident'."

Ron's Delivery Service negligently caused one accident. That accident caused only one person, Mr. Abellon, bodily injuries. As a result of the bodily injuries to Mr. Abellon, Mrs. Abellon, who was not present at the accident, suffered a loss of consortium. The issue here is not whether Mrs. Abellon has suffered a compensable loss, nor whether she had her own claim against Ron's Delivery Service, nor whether her loss was foreseeable, nor whether Ron's should compensate her. Neither is the issue here whether loss of consortium is the type of loss covered by the policy. It is covered, and Hartford does not contend otherwise. The issue here is rather how much insurance coverage Ron's bought to cover all the claims of Mr. and Mrs. Abellon.

The coverage provisions in the policy Ron's bought from Hartford are not written in legalese or insurance company doubletalk. They are written in the plainest English possible.

There is no doubt or ambiguity about what the policy says. It says the most Hartford will pay for all damages resulting from bodily injury to any one person is $250,000.

Only one person, Mr. Abellon, suffered bodily injuries, and Mrs. Abellon's damages resulted from his injuries. Does that bring her damages within "all damages resulting from bodily injury to any one person?" The answer is a resounding "yes." The simple, pure "all" is the most comprehensive word in the English language. There is no way to expand on it or improve it. Mrs. Abellon urges those policies involved in other cited decisions which elaborated on "all" or included partial lists of what was included in "all" are more clear. This suggestion should be rejected by us all. Unless Mrs. Abellon suffered a bodily injury of her own as a result of the accident, Hartford owes only $250,000 on its contract, which it has already paid.

Is Mrs. Abellon's loss of consortium a bodily injury? Common sense says no, and the law agrees. No reported case has ever held that loss of consortium is a bodily injury, and the only case directly on the issue holds it is not. (*United Services Automobile Assn.* v. *Warner* (1976) 64 Cal.App.3d 957, 964-965 [135 Cal.Rptr. 34].) "The cause of action for loss of consortium does not arise out of a bodily injury to the spouse suffering the loss; it arises out of the bodily injury to the spouse who can no longer perform the spousal functions. It is the loss of conjugal fellowship, affection, society

and companionship which gives rise to the cause of action." (Citing *Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 405-406 [115 Cal.Rptr. 765, 525 P.2d 669].)

"Although a sensitive person may actually suffer physical illness as a result of being deprived of that conjugal affection, it is not that illness which gives rise to the claim. The fact that loss of consortium may have physical consequences does not convert the cause of action into an action for bodily injury to the spouse suffering the loss. Such consequences would be an element of damage, the consequential damage arising out of the bodily injury to the injured spouse."

It should be noted this language is not limited to the issue of whether loss of consortium is a "bodily injury" as the words appear in any particular contract, but rather whether loss of consortium is a bodily injury at all. The majority here ask, "Did Jeanne sustain a bodily injury?" and without directly saying so are holding for the first time, and contrary to *United Services Automobile Assn.* v. *Warner, supra,* (64 Cal.App.3d 957), that she did. This conclusion goes against the grain of existing law and plain English.

Mrs. Abellon's damages for loss of consortium are not payable under the "per occurrence" provisions of paragraph 2 because that paragraph is specifically "subject to the limit" for "each person." That clearly means that since her damages "resulted from bodily injury to any one person caused by any one accident," the most Hartford will pay for the combined damages of Mr. and Mrs. Abellon is $250,000.

Since there is neither doubt nor ambiguity about what the contract of insurance provides, the court is not called upon to interpret it. Were we so called upon, we would read the contract as a layman might read it. We are not referred to any evidence Ron's Delivery Service understood or expected the interpretation Mrs. Abellon urges. Neither would any layman so read or interpret it. Only the most resourceful and imaginative lawyers could think of such an interpretation.

The judgment of the trial court was correct, and we should affirm.

A petition for a rehearing was denied May 8, 1985, and respondent's petition for review by the Supreme Court was denied July 11, 1985.